# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 20-1350V
UNPUBLISHED

| | |
|---|---|
| GREGORY MONSON,<br><br>                  Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                  Respondent. | Chief Special Master Corcoran<br><br>Filed: February 8, 2023<br><br>Special Processing Unit (SPU); Entitlement to Compensation; Table Injury; Decision Awarding Damages; Pain and Suffering; Influenza (Flu) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |

*Jimmy A. Zgheib, Zgheib Sayad, P.C., White Plains, NY,* for Petitioner.

*Amanda Pasciuto, U.S. Department of Justice, Washington, DC,* for Respondent.

**RULING ON ENTITLEMENT AND DECISION AWARDING DAMAGES**[1]

On October 9, 2020, Gregory Monson filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that he suffered a Shoulder Injury Related to Vaccine Administration ("SIRVA") as a result of an influenza ("flu") vaccine administered to him on September 27, 2018. Petition, ECF No. 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

For the reasons described below, and after holding a brief hearing on entitlement and damages in this matter, I find that Petitioner is entitled compensation, and I award

---

[1] Although I have not formally designated this Decision for publication, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002, because it contains a reasoned explanation for my determination. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

damages in the total amount of **$155,000.00, representing Petitioner's actual pain and suffering.**

I. **Relevant Procedural History**

As noted above, this case was initiated in October 2020. On February 22, 2022, after attempting to resolve this case informally, Petitioner filed a status report stating that the parties had reached an impasse. ECF No. 32. I thereafter set deadlines for the filing of briefs addressing both Petitioner's entitlement to compensation and an appropriate award of compensation (if Petitioner established entitlement). ECF Nos. 33.

On March 21, 2022, Petitioner filed a Motion for Ruling on Record and Brief in support of Damages, arguing that he had established entitlement to compensation for his SIRVA injury, and requesting an award of $130,000.00 for past pain and suffering and $1,500.00 per year for life for future pain and suffering. ECF No. 35.

On April 25, 2022, Respondent filed his Rule 4(c) Report and Response to Petitioner's Motion for Ruling on Record recommending that entitlement to compensation be denied under the terms of the Vaccine Act. ECF No. 38. Respondent further argued that in the event entitlement to compensation was found, Petitioner should be awarded the lesser amount of $65,000.00 for actual pain and suffering, and no compensation for future pain and suffering, which Respondent argued was not substantiated. *Id.*

Petitioner filed a Reply on May 5, 2022. ECF No. 39. In his Reply brief, Petitioner asserted that he was scheduled to undergo surgery for his SIRVA and, in consideration thereof, increased his request for past pain and suffering to $185,000.00. *Id.* Petitioner filed updated medical records, including his surgical records, between May and September 2022. ECF Nos. 40-45.

On October 18, 2022, I convened a status conference to inquire whether the filing of any further evidence was necessary before this case was submitted for my resolution, however, the parties were satisfied with the record as it stood. ECF No. 46. Additionally, I inquired whether Respondent would like to supplement his briefing in light of Petitioner's surgical procedure, updated medical records, and increased demand, but he declined to do so. *Id.* I urged the parties to informally settle this case, but indicated that I would proceed with scheduling this case for an expedited "Motions' Day" hearing on January 27, 2023. The parties agreed. *Id.* The Motions' Day hearing took place on January 27, 2023. Minute Entry dated January 27, 2023.[3] I orally ruled on Petitioner's entitlement to

---

[3] Jimmy Zgheib appeared on behalf of Petitioner, and Amanda Pasciuto appeared on behalf of Respondent. The transcript of the January 27, 2023 Hearing in this case was not filed as of the date of this Decision, but my oral ruling is incorporated by reference herein.

2

compensation, and after hearing argument made an oral damages determination as well. This Decision memorializes those findings/determinations.

## II.     Factual Findings and Ruling on Entitlement

### A.  Legal Standards

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding his claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Hum. Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Contemporaneous medical records are presumed to be accurate. *See Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Hum. Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Hum. Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[4] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48

---

[4] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying QAI are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

### B. Factual Finding Regarding QAI Criteria for Table SIRVA

The only Table requirement for SIRVA that Respondent contests is whether Petitioner's first post-vaccination symptom or manifestation of onset (specifically pain) occurred within 48 hours, as set forth in the Vaccine Injury Table and Qualifications and Aids to Interpretation ("QAI") for a Table SIRVA. 42 C.F.R. § 100.3(a)(XIV)(B) (seasonal influenza vaccines); 42 C.F.R. § 100.3(c)(10)(ii) (required onset for pain listed in the QAI);

4

ECF No. 38 at 15-18. Based upon a review of the entire record, and for the reasons set forth below, I find that it more likely than not was.

Petitioner received a flu vaccine in his right deltoid on September 27, 2018. Ex. 18 at 195. On October 1, 2018, Petitioner was seen by urologist Patrick Fowler, MD, and diagnosed with prostate cancer. Ex. 14 at 15-18. On October 9, 2018, Petitioner was seen by his primary care provider, William Harden, MD, regarding his diagnosis of prostate cancer and his peripheral vascular disease. Ex. 4 at 13. Between October 24 and November 1, 2018, Petitioner was seen by multiple providers at the Cancer Treatment Centers of America, where he treated for his prostate cancer. *See, e.g.,* Ex. 15. The above records do not contain any indication that Petitioner was suffering shoulder pain following his vaccination.

On December 12, 2018 (now nearly three months after the vaccination), Petitioner was seen by Dr. Harden with a chief complaint of "[s]houlder pain after flu shot/discuss cancer treatment." Ex. 4 at 12. It was noted that Petitioner "has right shoulder pain 2 months after having his flu shot. His range of motion is good, but the shoulder hurts." *Id.* Dr. Harden's assessment included: "SIRVA." *Id.*

On January 31, 2019, Petitioner completed a worker's compensation form – officially reporting "right shoulder pain from receiving shot." Ex. 18 at 330-36. The forms document the "Date of Accident" as "9-27-18," and a description of the accident indicates "Flu Shot On 9-27-18 Too High in Shoulder Sore Comes and Goes." Ex. 18 at 333. In response to the inquiry "when were you first aware of the injury or illness?" Petitioner wrote, "felt it same day but thought it would go away." *Id.* at 334. Petitioner also reported that he discussed his injury with his supervisor, Rick, three weeks after it happened, and his supervisor indicated "he had same" problem. *Id.* Petitioner identified his right shoulder as the part of body affected by the incident. *Id.* at 335. Petitioner's supervisor, Rick King, also completed a form indicating the incident was reported to him in September 2018. *Id.* at 337. He noted the report was "late" because "took a while for pain assessment" and described the incident as a "flu shot given too high." *Id.* at 337-38.

On February 1, 2019, Petitioner was seen by Laura Carr, PA, at the Lassen Medical Clinic. Ex. 7 at 18. Ms. Carr provides the following history in her record: "DOI: 09/27/2018 flu shot. Since receiving [f]lu shot in upper rt arm/shoulder, pt reports that the same area has been very painful with a severe burning sensation." Ex. 7 at 19. Petitioner's subsequent treatment records continue to describe the onset of his shoulder pain as occurring close-in-time to his vaccination.

Respondent observes, correctly, that Petitioner did not report his shoulder injury for 77 days after his vaccination – although when he did so he reported shoulder pain

5

following his flu shot for two months. ECF No. 38 at 16. This is despite the fact that Petitioner attended intervening visits with his primary care physician (on October 9, 2018) and the various medical providers that he saw at Cancer Treatment Centers of America ("CTCA") between October 24 and November 1, 2018. *Id.*at 16-17. In particular, Respondent points out that three of Petitioner's treaters at CTCA conducted normal upper extremity examinations of Petitioner during this time period, and that Petitioner reported abdominal pain, a condition unrelated to his cancer, while treating at CTCA. ECF No. 38 at 17 (citing Ex. 15 at 21, 24-25, 32).

I acknowledge that Petitioner's first relevant medical records post-vaccination fail to mention his shoulder pain, and that he did see treaters in the lengthy gap between vaccination and the first record of shoulder pain. But those visits were related to the diagnosis and treatment of a very serious medical condition – pancreatic cancer. And while Petitioner may have reported incidental symptoms, and undergone physical examinations, the focus of those visits was Petitioner's cancer, making it unsurprising that he did not raise concerns in regard to his shoulder pain, despite the opportunity to do so.

Additionally, it is not unusual in my experience adjudicating SIRVA claims that petitioners delay treatment, hoping their shoulder pain and/or soreness will abate. And once Petitioner did report his shoulder pain to his treaters, he consistently associated the onset of his pain with his flu vaccination. In particular, Petitioner's worker's compensation forms provide a very clear and detailed description of the onset of Petitioner's shoulder pain on September 27, 2018. Accordingly, I find that the medical records cited above (Ex. 4 at 12, Ex. 7 at 19, Ex. 18 at 330-38) as supported by Petitioner's sworn affidavit, (Ex. 3) preponderately support the conclusion that the onset of his shoulder pain likely began within 48 hours of his September 27, 2018 flu vaccination. My finding herein is consistent with the intent of the Act -- that awards are to be "made to vaccine-injured persons quickly, easily, and with certainty and generosity.'" H.R. Rep. No. 99–908, 3, 99th Cong., 2d Sess. 18, *reprinted in* 1986 U.S.C.C.A.N. 6344.

I credit Respondent's arguments about the vagueness of certain records pertaining to onset in this case, as well as the omission of Petitioner's shoulder pain in certain records, but note that the Program's evidentiary standards are nevertheless satisfied under the circumstances. As I have previously observed, "the Vaccine Act clearly does *not* require that symptoms be recorded within a specific timeframe to be preponderantly established. Rather, it requires only that onset *occurs* in the relevant timeframe." *Niemi v. Sec'y of Health & Hum. Servs.,* No. 19-1535V, 2021 WL 4146940, at *4 (Fed. Cl. Aug. 10, 2021) (citing Section 13) (emphasis in original). Neither does the Act require that the medical records document an exact date that the onset of a petitioner's shoulder pain began. A special master may thus find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even

though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2).

### C. Other Requirements for Entitlement

Based on the above, I find that Petitioner has satisfied all requirements for a Table SIRVA and is entitled to a presumption of causation. However, even if a petitioner has satisfied the requirements of a Table injury or established causation-in-fact, he or she must also provide preponderant evidence of the additional requirements of Section 11(c), *i.e.,* receipt of a covered vaccine, residual effects of injury lasting six months, etc. *See generally* § 11(c)(1)(A)(B)(D)(E). But those elements are established or undisputed in this claim. I therefore find that Petitioner is entitled to compensation in this case.

### D. Damages

#### 1. The Parties' Arguments

Citing three prior damages determinations, with awards ranging from $185,000.00 to $160,000.00, Petitioner requests $185,000.00 in actual pain and suffering. ECF No. 39 at 6-7.[5] He asserts that his course of treatment and the duration of his injury (approximately four years) is comparable to the aforementioned surgical SIRVA cases. Petitioner further argues that he should be awarded future pain and suffering damages of $1,500.00 a year for life, based on the finding of permanent disability in his Qualified Medical Examination, and the overall nature of his injury. ECF No. 35 at 21-23.

Respondent, by contrast, proposes the lesser award of $65,000.00 for Petitioner's pain and suffering – citing three non-surgical cases.[6] ECF No. 39 at 19. Respondent declined to raise his recommendation following Petitioner's surgery, but at oral argument offered *Shelton v. Sec'y of Health & Hum. Servs.,* No. 19-279V, 2021 WL 2550093, at *7 (Fed. Cl. May 21, 2021)(awarding $97,500.00 in past pain and suffering where Petitioner delayed seeking treatment for her injury for five months following her vaccination) as the surgical case most comparable to the instant claim (and thus in effect raised his proposed award). Petitioner's delay in seeking treatment, co-morbidities, and reports of mild to

---

[5] Petitioner cited the following cases: *Hooper v. Sec'y of Health & Hum. Servs.*, No. 17-12V, 2019 WL 1561519 (Fed. Cl. Mar. 20, 2019) (awarding $185,000.00 for past pain and suffering); *S.C. v. Sec'y of Health & Hum. Servs.*, No. 19-341V, 2021 WL 2949763 (Fed. Cl. June 14, 2021) (awarding $160,000.00 for past pain and suffering); and *Reed v. Sec'y of Health & Hum. Servs.,* No. 16-1670V, 2019 WL 1222925 (Fed. Cl. Feb. 1, 2019) (awarding $160,000.00 for past pain and suffering)

[6] Respondent cites the following cases: *Lucarelli v. Sec'y of Health & Hum. Servs.*, No. 16-1712V, 2019 WL 5889235 (Fed. Cl. Spec. Mstr. Aug. 21, 2019) (awarding $80,000.00 for past pain and suffering); *Dirksen v. Sec'y of Health & Hum. Servs*, 16-1461V, 2018 WL 6293201 (Fed. Cl. Spec. Mstr. Oct. 18, 2018) (awarding $85,000.00 for past pain and suffering); and *Knauss Sec'y of Health & Hum. Servs.*, No. 16-1372V, 2018 WL 3432906 (Fed. Cl. Spec. Mstr. May 23, 2018) (awarding $60,000.00).

moderate pain levels during the course of his treatment warranted an award less than $100,000.00. Respondent further argued Petitioner should not be awarded future pain and suffering, as there was no objective evidence that his injury was permanent. ECF No. 38 at 24-26.

### 2. Legal Standards for Damages Awards

In another recent decision, I discussed at length the legal standard to be considered in determining damages, and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussion in Sections II and III of *Friberg v. Sec'y of Health & Hum. Servs.,* No. 19-1727V, 2022 WL 3152827 (Fed. Cl. July 6, 2022).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[7]

### 3. Appropriate Compensation for Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact his awareness of his injury. Therefore, I analyze principally the severity and duration of Petitioner's injury. In determining appropriate compensation for pain and suffering, I have carefully reviewed and taken into account the complete record in this case, including, but not limited to: Petitioner's medical records, affidavits, filings, and all assertions made by the parties in written documents and at the expedited hearing held on January 27, 2023. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

One factor predominantly relevant to my determination is Petitioner's treatment delay. Petitioner alleges that his pain was immediately severe, but he did not obtain treatment until December 12, 2018, approximately two and a half months after his September 27, 2018 vaccination. While I find that such a delay is not a reason to deny

---

[7] *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

entitlement on the basis of Respondent's onset argument, the delay supports the conclusion that Petitioner's shoulder pain was not so severe as to necessitate urgent treatment immediately following his vaccination.[8]

Subsequently, Petitioner suffered a relatively moderate injury for nearly four years. While Petitioner reported pain levels fluctuated during the course of his treatment[9], he underwent significant treatment for his injury for a relatively long period of time, including 42 physical therapy sessions,[10] four steroid injections,[11] and two MRI scans.[12]

Over three and a half years subsequent to his vaccination, Petitioner's treatment culminated in shoulder surgery. On May 10, 2022, Petitioner underwent the following five

---

[8] I do take into consideration that Petitioner was diagnosed and receiving treatment for cancer immediately following his vaccination, but I find it more likely than not that if his shoulder pain were severe he would have nevertheless reported it to his providers and sought treatment for the pain.

[9] Petitioner's pain levels were higher at the end of his treatment, than compared to earlier in the course of his injury. *See, e.g.*, Ex. 8 at 2 (On March 15, 2019, Petitioner reported pain of 2-5/10); Ex. 8 at 56 (On March 6, 2020, Petitioner reported pain 0-3/10); Ex. 18 at 3 (On March 5, 2021, Petitioner reported pain of 2/10); Ex. 21 at 6 (On February 2, 2022, Petitioner reported pain of 8/10).

[10] Petitioner engaged 24 physical therapy sessions prior to his surgery, and 18 sessions subsequent to his surgery. Ex. 8; Ex. 30 at 23.

[11] Petitioner received four cortisone injections, including one contemporaneous with his surgery, on the following dates: June 16, 2020 (Ex. 7 at 75); December 30, 2020 (Ex. 16 at 4-5); February 2, 2022 (Ex. 21 at 7); and May 10, 2022 (Ex. 26 at 5).

[12] Petitioner's first MRI scan occurred on August 14, 2019. The MRI Impression indicated:

> 1. There is circumferential labral tearing which could predispose to multidirectional micro-instability. 2. There is no definite evidence for a full-thickness rotator cuff tear. 3. There is a mild partial-thickness articular surface fiber tear involving the distal posterior supraspinatus versus distal anterior infraspinatus tendon. 4. There is mild-to-moderate cartilage loss within the glenohumeral joint space, consistent with degenerative joint disease. 5. There are mild changes of degenerative joint disease within the AC joint.

Ex. 6 at 5. Petitioner's second MRI scan occurred on January 22, 2021. The MRI Impression indicated:

> 1. There is persistent high signal within the anterior superior glenoid labrum. A labral tear was documented on the previous MR arthrogram dated 08/14/2019. Consider repeat MR arthrography for improved evaluation of the glenoid labrum if clinically necessary. 2. Acromioclavicular arthrosis predisposes to the clinical syndrome of subacromial impingement and appears stable to the previous study. 3. The rotator cuff and long head of the biceps tendon appear intact. The documented partial thickness articular surface tear of the distal supraspinatus tendon is not visible in the absence of intra-articular gadolinium. 4. A normal volume of glenohumeral joint fluid is present.

Ex. 17 at 4.

separate procedures under general anesthesia: "1. Right rotator cuff and labral debridement. 2. Right arthroscopic partial distal clavicle excision. 3. Right arthroscopic acromioplasty. 4 Right arthroscopic lysis of adhesions. 5. Right shoulder cortisone injection." Ex. 26 at 5. Petitioner's post-operative diagnoses included: "1. Right rotator cuff tear. 2. Right shoulder impingement. 3. Right acromioclavicular degenerative joint disease contributing to impingement. 4. Right mild glenohumeral degenerative joint disease with labral tear. 5. Right glenohumeral adhesions." *Id.* Petitioner's surgeon, Riico Dotson, MD, noted, among other findings, in his post-surgery description that "significant subacromial bursitis" was present. *Id.* at 6.

However, post-surgery, Petitioner appears to have made a fairly good recovery. On August 15, 2022, nearly four years after his vaccination, Petitioner underwent his 18th post-surgery physical therapy session. Petitioner observed at that time that he was "feeling stronger" and "noticed decreased difficulty when performing [activities of daily living]". Ex. 30 at 23. Petitioner's physical therapist observed that he was "making good progress on clinical goals, demonstrating improved active [range of motion] to [within normal limits] and tolerance to repetitive use below shoulder comfortably." *Id.* No subsequent records have been filed.

I also note that it appears Petitioner's pain was not entirely due to his SIRVA. Petitioner's March 5, 2021 Qualified Medical Examination ("QME") attributed 80 percent of Petitioner's disability to his vaccine injury and 20 percent to pre-existing degenerative issues. Ex. 18 at 21. However, I acknowledge that the QME found that Petitioner's SIRVA aggravated these previously asymptomatic issues. *Id.* Additionally, Petitioner was diagnosed in June 2021 with rheumatoid arthritis (in the joints of both hands), thus some of the pain and suffering experienced my Petitioner during the last year of his injury was attributable to that diagnosis. Ex. 19 at 13.

Petitioner argues his March 5, 2021 QME, and record as a whole, supports an award of future pain and suffering. But the QME found that he had 0% whole person impairment based on a strict interpretation of the *American Medical Association Guides to the Evaluation of Permanent Impairment*, Fifth Edition. Ex. 18 at 20. At most, and because he reported at that time that his pain interfered with his activities of daily living, he was assigned a 1% whole person impairment rating utilizing a different standard relying on the (subjective) basis of pain. *Id.* The QME is thus fairly faint support for a future pain and suffering award.

In my experience adjudicating SIRVA claims, most petitioners report some residual shoulder pain which interferes with their activities of daily living after they have largely recovered from their injury, so that fact alone does not typically support a future damages component, absent other factors. The Program thus looks for objective proof of a

10

medically-documented significant loss of function, or ongoing medical needs that are not likely to desist. *See, e.g.*, *Hooper v. Sec'y of Health & Human Servs.*, No. 17-0012V, 2019 WL 1561519 (Fed. Cl. Spec. Mstr. Mar. 20, 2019) (awarding $1,500.00 a year for life representing future pain and suffering where the petitioner was found to have lost 50% of his left arm function). Additionally, subsequent to his QME Petitioner underwent a successful shoulder surgery, and another round of physical therapy, and sought no further care after August 2022, despite not being formally discharged from physical therapy. And the only mention of pain at his August 15, 2022 (last) physical therapy appointment is contained in a "history," noting Petitioner's rheumatoid arthritis (unrelated to his SIRVA) was "painful intermittently" and that he was "using medication and [would] undergo infusion treatment." *Id.*

In making my determination, I have fully considered Petitioner's affidavit. Ex. 3. However, I do not find any unique personal factors that would independently support a larger award (such as a pregnancy at the time of injury). *See Desrosiers v. Sec'y of Health & Hum. Servs.*, No. 16-0224V, 2017 WL 5507804, (Fed. Cl. Sept. 19, 2017).

Regarding comparable cases that could provide guidance, I find that two of the cases offered by Petitioner, *Reed v. Sec'y of Health & Human Servs.*, No. 16-1670V, 2019 WL 1222925 (Fed. Cl. Spec. Mstr. Feb. 1, 2019) (awarding $160,000.00 for past pain and suffering) and *S.C. v. Sec'y of Health & Hum. Servs.*, No. 19-341V, 2021 WL 2949763 (Fed. Cl. June 14, 2021) ($160,000.00 for past pain and suffering cases), are reasonably useful.[13] While there are distinguishing factors between the instant case and those cases, *Reed* and *S.C.* represent appropriate surgical cases comparable to Petitioner's circumstances. But because the experience of those petitioners was a little more severe, I have slightly reduced the award herein.[14] Otherwise, Petitioner's comparables were superior to Respondents – especially since most did not involve surgery, a factor I have previously noted supports a higher award.

---

[13] The third case cited by Petitioner, *Hooper v. Sec'y of Health & Human Servs.*, No. 17-0012V, 2019 WL 1561519 (Fed. Cl. Spec. Mstr. Mar. 20, 2019) (awarding $185,000.00 in past pain and suffering and $1,500.00 a year for life in future pain and suffering) involves a more severe injury than that suffered by Petitioner herein.

[14] I observe that the *Reed* petitioner remained under the care of pain management specialists and continued to require the pain medication Tramadol to treat her injury. *Reed,* 2019 WL at *9,11, 16. (Notwithstanding these facts, the *Reed* petitioner was also not found to be entitled to compensation for future pain and suffering.) In this case, no evidence exists that Petitioner remains under medical care for his injury. Additionally, the *Reed* petitioner's physical ability to care for her young child with an ADHD autism spectrum disorder was negatively impacted by her injury – a factor not present in the instant case. *Id.* at *11, 16. Finally, I observe that the SC petitioner underwent 95 physical therapy sessions, considerably more than the Petitioner herein. *S.C.*, 2020 WL at *5.

Accordingly, **I find that $155,000.00 represents a fair and appropriate amount of compensation for Petitioner's past or actual pain and suffering, and I decline to award future pain and suffering.**

## Conclusion

I award **Petitioner a lump sum payment of $155,000.00, representing actual pain and suffering, in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a) of the Vaccine Act. *Id*.

This amount represents compensation for all damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this Decision.[15]

**IT IS SO ORDERED.**

                                         <u>s/Brian H. Corcoran</u>
                                         Brian H. Corcoran
                                         Chief Special Master

---

[15] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.